IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Margaret Garcia,                      Case No. 3:08-CV-02944

          Plaintiff

v.                                              ORDER

Whirlpool Corporation,

          Defendant

      This is an employment discrimination case. Defendant Whirlpool Corporation fired plaintiff Margaret Garcia after she had been on medical leave for two years following a shoulder injury. Garcia filed suit under the Americans with Disabilities Act (ADA) and O.R.C. § 4112.02. She claims that she is disabled and Whirlpool fired her unlawfully: 1) due to her disability; 2) in retaliation for her filing of a workers' compensation claim; and 3) in retaliation for her filling of an earlier discrimination lawsuit which she had voluntarily dismissed. She also claims that Whirlpool intentionally inflicted emotional distress, and was negligent in its hiring, supervision and retention of managerial staff. Jurisdiction is proper under 28 U.S.C. 1331.

      Whirlpool has filed a motion for summary judgment on all claims. [Doc. 44]. For the following reasons, the motion shall be granted.

**Background**

**1. Employment History**

Garcia began working for Whirlpool in 1994. In 1997, Garcia was diagnosed with a chronic left shoulder strain and placed on permanent work restrictions. These restrictions limited Garcia's work to positions requiring: 1) no lifting greater than forty pounds maximum, twenty-five pounds frequently, or fifteen pounds constantly; 2) no over-the-shoulder work; and 3) job rotation every thirty minutes.

In 2000, Garcia began working in the "pin and cup" position on assembly line four. An essential function of the position is the use of the right arm.

**2. Injury and Subsequent Restrictions**

On August 21, 2003, Garcia injured her right arm and shoulder while working. She initially saw Dr. Georges Jabaly in Whirlpool's Employee Health Center (EHC). Dr. Jabaly diagnosed a right shoulder strain with muscle spasm and a right upper arm strain. He returned Garcia to work with no restrictions related to her right arm or shoulder.

Garcia went on medical leave in October, 2003. She filed a workers' compensation claim due to her injury sometime between the end of November and early December, 2003.

Sometime after her injury, Garcia met with Dr. Skie and Dr. Goitz. On July 20, 2004, she received a diagnosis of right shoulder impingement, synovitis and a frayed rotator cuff. She had surgery on her right shoulder soon after the diagnosis.

In January, 2005, Garcia returned to work on a transitional program, working two hours of regular duty alternating with six hours of light-duty. She performed no overhead work and no lifting greater than ten pounds. She did not use her right arm in any capacity. Garcia worked light duty on

assembly line four, ensuring that carts moving down the assembly line did not get stuck. Under this program, she slowly increased her work duties every week for the next month.

In July, 2005, Garcia had a second surgery for her right shoulder injury. She returned to work with additional restrictions, which included no repetitive grasping with the right hand, no lifting greater than five pounds with the right hand, no lifting greater than ten pounds frequently or twenty pounds occasionally; no bending, twisting, turning, squatting or kneeling greater than sixty-six percent of shift and no reaching below knees or pushing or pulling greater than thirty-three percent of shift. Garcia required prescription pain medication to tolerate her pain.

Whirlpool prohibits employees from working on an assembly line while taking prescription pain medication. As a result, Whirlpool assigned Garcia light duty work in the EHC, where she performed clerical tasks, data entry, cleaning, sorting parts from the line and cleaning break shoes.

On June 19, 2006, Garcia informed Barb Dewey, the human resources administrator in charge of workers' compensation benefits, that she intended to file an appeal regarding the determination made in her workers' compensation hearing.

Garcia worked in the EHC until July 10, 2006.

### 3. Placement on Medical Leave

On July 10, 2006, Garcia met with Dewey, Mark Schulz, a human resources administrator, and Tom Wireman, a senior safety engineer. Dewey informed Garcia that Whirlpool identified her as having reached maximum medical improvement, and that because her restrictions appeared permanent, Garcia was no longer eligible for the Return to Work Program. Dewey advised Garcia that Whirlpool was placing her on medical leave.

Garcia also learned that if she wanted to return to work, she was required to provide medical documentation regarding the permanent nature of her restrictions. She was also required to provide documentation certifying her to work on the plant floor without sedative medication and that she would not take sedative medication while on the plant floor. Once she satisfied these conditions, she could bid on a permanent job.

Whirlpool allows employees to remain on medical leave for a total of two years. During that time, individuals remain employees and continue to receive all employment-related benefits.

On July 13, 2006, Garcia filed a charge of disability discrimination with the Ohio Civil Rights Commission.

In May, 2007, Garcia had a third surgery on her right shoulder. The surgery did not correct the problem, and the doctor certified Garcia as having reached maximum medical improvement.

### 4. Applications for Reassignment

Whirlpool maintained a job bidding procedure whereby hourly employees could bid on available positions on the floor. Whirlpool's policy and practice is to hire the most qualified candidate for open positions. Whirlpool asserts that it generally awarded jobs to the employee with the most seniority.

Garcia did not bid on any hourly positions. She believed herself incapable of performing assembly jobs due to their repetitive nature.

Garcia expressed interest in and applied for several administrative, salaried, or supervisory positions, including engineer technician, quality technician, line leader or supervisor, maintenance area leader, dispatcher, manufacturing operations intern, controls engineer, manufacturing engineer, quality engineer, weekend superintendent, and process engineer. Garcia also requested that human

resources forward letters to the engineering and quality departments so that she could be considered for any open positions.

Garcia interviewed for one engineer technician position, but did not get the job. She did not receive an interview for some positions because of her restrictions. Her applications were unsuccessful.

Whirlpool awarded the maintenance area leader position to a candidate with management experience. The successful dispatch position candidate had decades of experience. Whirlpool rejected Garcia for the internship because the position was limited to university students. The successful controls engineer candidate had many years of experience as an engineering controls technician. The candidates selected for manufacturing supervisor had several years of supervising experience. The successful quality engineer candidate had a bachelors degree in mechanical engineering and knowledge of computer software systems. The successful weekend supervisor position candidate had held other supervisory positions. Whirlpool cancelled the process engineer position.

### 6. Harassment

Garcia asserts that during the course of her employment, Ben Harvey, a supervisor, told her that he did not want to deal with anybody's restrictions or with restricted people. He also called her a "gimp" and laughed, mortifying her. Garcia reported these comments. Garcia also overheard Keith Russell state that he did not like dealing with restrictions.

**7. Termination and Procedural History**

Whirlpool's medical leave policy allows employees to remain on medical leave for a total of two years. Because Garcia did not return to work within two years, Whirlpool terminated her employment on July 12, 2008.

Garcia filed this suit alleging Whirlpool discriminated against her based on her alleged disability and retaliated against her in violation of the ADA and the ORC. She also alleges that Whirlpool intentionally inflicted emotional distress and negligently hired, retained and supervised her managers and supervisors. Whirlpool has filed this motion seeking summary judgment on all claims.

**Standard of Review**

A party is entitled to summary judgment on motion under Fed. R. Civ. P. 56 where the opposing party fails to show the existence of an essential element for which that party bears the burden of proof. *Celotex Corp. v. Cartrett*, 477 U.S. 317, 322 (1986). The movant must initially show the absence of a genuine issue of material fact. *Id.* at 323.

Once the movant meets that initial burden, the "burden shifts to the nonmoving party [to] set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and submit admissible evidence supporting its position. *Celotex*, *supra*, 477 U.S. at 324.

In deciding a motion for summary judgment, I accept the opponent's evidence as true and construe all evidence in the opponent's favor. *Eastman Kodak Co. v. Image Tech. Servs., Inc*., 504 U.S. 451, 456 (1992). The movant can prevail only if the materials offered in support of the motion show there is no genuine issue of a material fact. *Celotex*, *supra*, 477 U.S. at 323.

**Discussion**

**1. Disability Discrimination**

Garcia brings disability discrimination claims under both the ADA and O.R.C. § 4112.02. Because Ohio courts generally follow federal law in analyzing disability discrimination claims, and because the parties have identified no relevant difference between Ohio and federal case law, I treat the claims as one for purpose of analysis. *See*, *e.g.*, *Plant v. Morton Intern., Inc.*, 212 F.3d 929, 938-39 (6th Cir. 2000); *Columbus Civil Serv. Comm'n v. McGlone*, 82 Ohio St. 3d 569, 573 (1998) (noting that the ADA is similar to the Ohio law and looking to federal law in order to determine whether nearsightedness is a disability under § 4112).

To recover under the ADA, Garcia must prove that she: 1) suffers from a disability as defined by the ADA; 2) is otherwise qualified to perform the requirements of his position, with or without reasonable accommodation; and 3) was discharged solely because of the disability. *E.g.*, *Williams v. London Util. Comm'n*, 375 F.3d 424, 428 (6th Cir. 2004).

Analysis of Garcia's disability claims follows the burden-shifting sequence of *McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973). Thus, Garcia must first make a prima facie case by showing that: 1) she suffers from a disability; 2) she is otherwise qualified for the position, with or without reasonable accommodation; 3) she suffered an adverse employment decision; 4) Whirlpool knew or had reason to know of her disability; and 5) she was replaced, the position remained open, or similarly situated, non-disabled employees were treated more favorably. *Walsh v. United Parcel Service*, 201 F.3d 718, 725 (6th Cir. 2000).

If Garcia establishes a prima facie case, Whirlpool has to articulate, but not ultimately prove, a legitimate, non-discriminatory reason for its decision. *Williams*, *supra*, 375 F.3d at 428. Once

Whirlpool does so, Garcia must produce sufficient evidence to prove that the articulated reason was actually a pretext masking discrimination. *Id.*

### A. Prima Facie Case

The parties do not dispute that Garcia suffered an adverse employment decision, that Whirlpool was aware of her restrictions or that Garcia's position was filled or remained open. There is no evidence of a similarly situated, non-disabled employee being treated more favorably. The only questions remaining with regard to Garcia's prima facie case are whether Garcia suffers from a disability as defined by the ADA and whether she is otherwise qualified for the position, with or without reasonable accommodation.

### i. Disability as Defined by the ADA

The applicable provisions of the ADA define a disability as: a) a physical or mental impairment that substantially limits one or more major life activities; b) a record of such impairment; or c) being regarded as having such an impairment. 42 U.S.C. § 12102(2) (2006).[1]

"Major life activities" are defined as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. §

---

[1] The ADA Amendments Act of 2008, which became effective on January 1, 2009, does not apply retroactively to govern conduct occurring before the Act became effective. *Milholland v. Sumner County Bd. of Ed.*, 569 F.3d 562, 565 (6th Cir. 2009). Prior to the 2008 amendments, the impairment the claimant was "regarded as having" was defined as an impairment that substantially limits one or more major life activities. *Id.* The 2008 amendments altered that definition:

> An individual meets the requirement of "being regarded as having such an impairment" if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.

42 U.S.C. § 12102(3)(A) (2009).

1630.2(i). However, an EEOC interpretive guideline states that this list is not meant to be exclusive, and added lifting as one example of another "major life activity." 29 C.F.R. § 1630.2, App. § 1630.2(i).

In determining whether an individual is substantially limited in performing a major life activity, I consider both the severity and the long-term impact of the impairment. *MX Group, Inc. v. Covington*, 293 F.3d 326, 338 (6th Cir. 2002).

Garcia has permanent injuries to both shoulders. Her right arm injuries affect her ability to grasp. She has to rest her arm when eating, talking on the phone or taking a shower. She cannot lift more than five pounds with her right hand, and is restricted from lifting greater than ten pounds frequently or twenty pounds occasionally. She cannot perform repetitive work.

Lifting is a major life activity. 29 C.F.R. § 1630.2, App. § 1630.2(I); *Wysong v. Dow Chemical Co.*, 503 F.3d 441, 450 (6th Cir. 2007). While the Sixth Circuit has rejected ADA claims based on lifting restrictions, I find these cases distinguishable. In *McKay v. Toyota Motor Mfg., U.S.A., Inc.*, 110 F.3d 369 (6th Cir. 1997), the plaintiff suffered from carpel tunnel restricting the use of one arm. In *Marcum v. Consol. Freightways*, 48 F. Supp. 2d 721, 726-27 (N.D. Ohio 1999), the plaintiff's back injury prevented him from performing heavy lifting. In *Schneider v. Charles Seligman Distrib. Co., Inc.*, 995 F. Supp. 756, 760 (E.D. Ky. 1998), the plaintiff was restricted from lifting more than thirty pounds, and the court found that his impairment appeared less restrictive than the plaintiff in *McKay*. Garcia's restrictions are more severe and extensive than those suffered by plaintiffs in the cases cited by Whirlpool.

The Sixth Circuit has held that working is a major life activity. *E.g.*, *Mahon v. Crowell*, 295 F.3d 585, 590 (6th Cir. 2002) (collecting cases). Garcia's restrictions also affect her ability to work.

An impairment will be considered a disability if a plaintiff is "significantly restricted" in her ability to perform "either a class of jobs or a broad range of jobs in various classes compared to other workers with comparable training, skills, and ability." *Marcum*, *supra*, 48 F. Supp. 2d at 726. The Sixth Circuit has held that "[a]n impairment that disqualifies a person from only a narrow range of jobs is not considered a substantially limiting one." *McKay*, *supra*, 110 F.3d at 373. Garcia's shoulder injuries substantially restrict her movements in a variety of ways affecting her ability to perform a broad range of jobs, as evidenced by Whirlpool's inability to consider her for technician positions due to her restrictions.

Garcia's alleged injuries "significantly restrict" the "condition, manner, or duration" under which she can perform a major life activity as compared to the general population. *Cotter v. Ajilon Services, Inc.*, 287 F.3d 593, 598 (6th Cir. 2002). For purposes of the pending summary judgment motion Garcia has established that she suffers from a disability as defined by the ADA.

### ii. Otherwise Qualified

Garcia also bears the burden of showing that she is a "qualified individual" under the ADA. A "qualified individual with a disability" is one "who, with or without reasonable accommodation, can perform the essential job functions of the position held or desired." *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 882 (6th Cir. 1996).

There is no dispute that the use of the right arm and hand is an essential function of the "pin and cup" position and that Garcia cannot perform this function without reasonable accommodation.

Reassignment to another position can constitute a reasonable accommodation. *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 457 (6th Cir. 2004). In fact, "the ADA requires an employer to consider reassignment to a vacant position if the disabled employee cannot be reasonably

11

accommodated in his or her current job." *Bratten v. SSI Services, Inc.*, 185 F.3d 625, 633-34 (6th Cir. 1999). Garcia argues that the positions she applied for constituted reasonable accommodations of her disability.

To satisfy its duty under the ADA, Whirlpool has to consider transferring Garcia only to a position "comparable to the employee's prior position . . . if the individual is qualified, and the position is vacant within a reasonable amount of time." *Hedrick*, *supra*, 355 F.3d at 457. A position is comparable if it is roughly equivalent "in terms of pay, status, etc." *Id.* "The ADA does not require an employer to offer an employee a promotion as a reasonable accommodation." *Id.*

Garcia has presented no evidence that any of the positions she applied for are comparable to her "pin and cup" position. As Whirlpool points out, Garcia was not qualified for the process engineer position or the internship, and the salaried or supervisory positions would have been a promotion for her. Because the ADA does not require promotion as a reasonable accommodation, Garcia has not established that she is qualified to work with reasonable accommodation.

Even assuming that the positions were comparable to Garcia's former job, she would not be entitled to automatic reassignment where Whirlpool has a standard policy and bidding procedure for all employees.[2] The positions Garcia identifies as reasonable accommodations were available to all employees who wished to apply. Whirlpool's standard policy was to hire the most qualified candidate.

The ADA does not mandate preferential treatment. *See*, *e.g.*, *Hedrick*, *supra*, 355 F.3d at 459; *Daugherty v. El Paso*, 56 F.3d 695, 700 (5th Cir.1995)("[W]e do not read the ADA as requiring

---

[2] The Supreme Court in *US Airways, Inc. v. Barnett*, 535 U.S. 391 (2002), held that reassignment was not a reasonable accommodation where it displaced the operation of a longstanding, neutral seniority system, but Whirlpool makes no showing of such a system here.

affirmative action in favor of individuals with disabilities, in the sense of requiring that disabled persons be given priority in hiring or reassignment over those who are not disabled. It prohibits employment discrimination against qualified individuals with disabilities, no more and no less."); *Terrell v. USAir*, 132 F.3d 621, 627 (11th Cir.1998)("We cannot accept that Congress, in enacting the ADA, intended to grant preferential treatment for disabled workers.").[3] Whirlpool provides evidence uncontested by Garcia that the individuals hired for the positions in question were more qualified than she.

Garcia also alleges that Whirlpool failed to engage in the interactive process with her because there was no reply to her requests to have information forwarded to departments with vacancies, and because Whirlpool declined to interview her for some positions due to her restrictions. An employer violates the requirement to engage in an interactive process, however, "only if, among other things, the employee can demonstrate that the employee could have been reasonably accommodated but for the employer's lack of good faith." *Denczak v. Ford Motor Co.*,

---

[3] The scope of an employer's duty to consider reassigning an employee with a disability to an open position has been the subject of much controversy within the appellate courts.

The Tenth Circuit, following the D.C. Circuit, has held the duty to reassign to be mandatory. *Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1164 (10th Cir. 1999). The D.C. Circuit explained, "the word 'reassign' must mean more than allowing an employee to apply for a job on the same basis as anyone else.'"*Aka v. Wash. Hospital Ctr.*, 156 F.3d 1284, 1304 (D.C. Cir. 1998).

The Sixth Circuit, however, appears to agree with the Fifth, Seventh, Eighth, and Eleventh Circuits in finding that the ADA does not impose a mandatory obligation to reassign the disabled employee where the employer has a policy of awarding the transfer position to the most qualified candidate, and the employer would be required to turn away a superior candidate. *E.g.*, *Huber v. Wal-Mart Stores, Inc.*, 486 F.3d 480, 483 (2007); *EEOC v. Humiston-Keeling, Inc.*, 277 F.3d 1024, 1027-28 (7th Cir. 2000).

In 2007, the Supreme Court granted a petition for a writ of certiorari to answer this question, but the parties settled and the case was dismissed before merits briefing. *Huber v. Wal-Mart Stores, Inc.*, 552 U.S. 1074, *cert. dismissed*, 552 U.S. 1136 (2007).

215 Fed. Appx. 442, 446, 2007 WL 328615, *3 (6th Cir. 2007) (unpublished disposition). Garcia has not shown that she could have been reasonably accommodated.

Because Garcia has not met her burden of showing she is a "qualified individual" under the ADA, she has failed to make a prima facie case of disability discrimination.

### B. Pretext

Even if Garcia could establish a prima facie case, she must still demonstrate there is at least a triable issue of fact as to whether Whirlpool's reasons for firing her are pretext for discrimination. *See McDonnell Douglas*, *supra*, 411 U.S. at 802.

A plaintiff can satisfy her burden of showing pretext by presenting evidence that the defendant's reasons: 1) lacked a factual basis; 2) were not the actual reasons for the employment action; or 3) were insufficient to justify or explain the defendant's action. *Logan v. Denny's, Inc.*, 259 F.3d 558, 567 (6th Cir. 2001).

Whirlpool explains that it placed Garcia on medical leave when she was no longer eligible for Whirlpool's Return to Work Program and still could not perform the essential functions of the "pin and cup" position. Whirlpool asserts that it rejected Garcia's applications for non-discriminatory reasons, including Garcia's inability to meet requisite criteria for the positions and the availability of more qualified candidates. Whirlpool ultimately fired Garcia after she had been on medical leave for two years, pursuant to its leave policy.

Garcia argues that these reasons did not actually motivate Whirlpool's decision. The only facts Garcia offers to establish pretext are the statements of Ben Harvey and Keith Russell and her affidavit that other employees with restrictions received accommodations.

"Statements by nondecisionmakers . . . cannot suffice to satisfy the plaintiff's burden of demonstrating animus." *Bush v. Dictaphone Corp.*, 161 F.3d 363, 369 (6th Cir. 1998) (internal citations omitted). There is no evidence that either Harvey or Russell had any input on any of the employment decisions that Garcia claims were discriminatory.

Garcia's affidavit regarding the accommodations given to other employees lacks a proper foundation. In the affidavit, she identifies a number of employees who have suffered injuries outside of work and received accommodations. She relies only her own observations of these individuals and what some of the individuals have said to her. She does not have their medical records or any information about their particular restrictions. She does not have any information as to how these employees came to be working in the jobs in which she observed them. "A party opposing a motion for summary judgment cannot use hearsay or other inadmissible evidence to create a genuine issue of material fact." *Sperle v. Mich. Dept. of Corrections*, 297 F.3d 483, 495 (2002).

Considering the allegations in the affidavit does not help Garcia's claim. To the contrary, her evidence shows that Whirlpool accommodated individuals she believes to be within her protected class.

Garcia can neither make a prima facie case of disability discrimination nor show a triable issue of fact as to whether the reasons proffered for her termination were pretextual. Her disability discrimination claims fail as a matter of law.

### 2. Workers' Compensation and O.R.C. § 4112.02(I) Retaliation

As with her disability discrimination claims, Garcia bases her retaliation claims on circumstantial evidence; thus, the burden-shifting framework outlined in *McDonnell Douglas*, *supra*, 411 U.S. at 802, applies to the analysis of those claims. Just as with the disability discrimination

claim, if Garcia makes a prima facie case of retaliation, the burden shifts to Whirlpool to show a legitimate reason for her termination. Garcia must then show that there is a triable question of fact as to whether that reason is a pretext for retaliation.

The elements of a prima facie case of retaliation differ from the elements of a prima facie case of disability discrimination. To establish a prima facie case for both the workers' compensation retaliation claim and the ORC § 4112.02(I) retaliation claim, Garcia must show: 1) she engaged in a protected activity; 2) she was subjected to an adverse employment action; and 3) a causal link existed between the protected activity and the adverse action. *White Mount Carmel Med. Ctr.*, 150 Ohio App. 3d 316, 328 (2002); *Sosby v. Miller Brewing Co.*, 415 F. Supp. 2d 809, 817 (S.D. Ohio 2005).

The parties dispute the existence of the causal link for both claims, but even assuming that Garcia could establish a prima facie case, the claims would fail because she cannot show a triable question of fact that Whirlpool's reasons for firing her were pretextual. Garcia again relies on the statements of Harvey and Russell and her affidavit that other employees with restrictions received accommodations. For the same reasons discussed above, this showing is insufficient to establish pretext.

Summary judgment is warranted on Garcia's retaliation claims.

### 3. Intentional Infliction of Emotional Distress

Garcia must show four elements to establish a claim for intentional infliction of emotional distress: 1) Whirlpool intended to cause Garcia emotional distress, or knew or should have known that its actions would cause serious emotional distress; 2) Whirlpool's conduct was extreme and outrageous; 3) Whirlpool's actions proximately caused Garcia psychic injury; and 4) the mental

anguish Garcia suffered was serious. *Hanly v. Riverside Methodist Hosp.*, 78 Ohio App. 3d 73, 82 (1991). The Ohio Supreme Court recognizes liability for intentional infliction of emotional distress "where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Yaeger v. Local Union 20*, 6 Ohio St. 3d 369, 375 (1983), *abrogated on other grounds, Welling v. Weinfield*, 113 Ohio St. 3d 464 (2007).

An unfair employment decision does not support a claim of intentional infliction of emotional distress. *Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365, 376 (6th Cir. 1999). Garcia advances the comments of Harvey and Russell to support her claim for intentional infliction of emotional distress. These comments simply do not rise to the level of extreme and outrageous conduct. Summary judgment is appropriate on Garcia's intentional infliction of emotional distress claim.

### 4. Negligent Hiring, Supervision and Retention

Garcia alleges that Whirlpool was negligent in hiring, supervising and retaining its supervisory and managerial staff because the staff was "incompetent in administering discrimination, harassment, and Workers' compensation retaliation laws." [Doc. 51, at 23] (emphasis deleted).

Whirlpool argues that these claims are preempted by Ohio's workers' compensation laws. Garcia asserts that because her claims are based on the retaliatory actions, they are not preempted by workers' compensation laws. I need not determine whether Ohio's workers' compensation laws preempt these claims, as they fail on the merits.

17

To establish her negligent hiring, supervision and retention claims, Garcia must show proof of five elements: 1) the existence of an employment relationship; 2) the employee's incompetence; 3) Whirlpool's actual or constructive knowledge of such incompetence; 4) the employee's act or omission that caused Garcia's injuries; and 5) Whirlpool's negligence in hiring or retaining the employee was the proximate cause of Garcia's injuries. *Ruta v. Breckenridge-Remy Co.*, 69 Ohio St. 2d 66, 69 (1982).

To support these claims, Garcia alleges her discrimination and workers' compensation claims were handled incompetently and points to the statements of Harvey and Russell. This evidence supports only the first element of the cause of action.

As the actions of Whirlpool in terminating Garcia's employment do not constitute a violation of federal or state disability discrimination law, Garcia has presented no evidence that the managerial and supervisory staff was incompetent, and thus cannot show that Whirlpool knew or should have known of such incompetence. Lawful termination is not a legal injury, and she has not shown that the alleged negligence in hiring, supervising or retaining of the staff proximately caused her alleged injuries.

Garcia argues that the statements of Harvey and Russell constitute "harassing behavior" and therefore demonstrate incompetence. It is true that "harassing behavior is *per se* incompetent behavior." *Hidy Motors, Inc. v. Scheaffer*, 183 Ohio App. 3d 316, 326 (2009). But these two isolated comments are hardly enough to establish harassment. *See Clark v. United Parcel Serv., Inc.*, 400 F.3d 341, 351 (6th Cir. 2005) (noting that behavior must be ongoing to constitute harassment).

Moreover, "Ohio Courts take the view that a plaintiff must be able to establish a tort claim against the individual employee in order to maintain an action for negligent supervision or retention

18

against the employer." *Hout v. Mansfield*, 550 F. Supp. 2d 701, 746 (N.D. Ohio 2008), (citing *Myers v. Goodwill Indus. of Akron, Inc.*, 130 Ohio App.3d 722, 721 (1998) (negligent retention claim against employer failed where plaintiff could not show that the employee's conduct rose to the level of intentional infliction of emotional distress)). The conduct of Harvey and Russell does not rise to the level of intentional infliction of emotional distress.

Summary judgment is appropriate on Garcia's negligent hiring, supervision and retention claims.

## Conclusion

For the foregoing reasons, it is hereby:

ORDERED THAT defendant Whirlpool's motion for summary judgment [Doc. 44] be, and the same hereby is granted.

So ordered.

s/James G. Carr
United States District Judge